# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAROLYN D. CROOMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-380-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Carolyn D. Crooms requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

"[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 13, 1967, and was forty-six years old at the time of the administrative hearing (Tr. 55). She has a tenth grade education and a certified nursing assistant certificate, and has worked as a certified nurse assistant (Tr. 56, 73). The claimant alleges she has been unable to work since January 1, 2012, due to back pain; low blood count; and arthritis in her wrists, hips, knees, and feet (Tr. 201, 234).

## Procedural History

On June 12, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 21, 2014 (Tr. 34-45). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she could

lift/carry twenty pounds occasionally and ten pounds frequently, and sit/stand/walk six hours each in an eight-hour workday, but could only occasionally stoop and crawl (Tr. 39). The ALJ further found the claimant required a sit/stand option every fifteen to thirty minutes without leaving the workstation, and the ability to elevate her feet three to four inches off the ground throughout the workday while seated (Tr. 39). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there because there was work she could perform in the regional and national economies, *e. g.*, ticket seller and cutter-and-paster (Tr. 45).

## Review

The claimant contends that the ALJ erred in assessing her RFC by failing to properly consider her non-severe impairments at step four of the sequential analysis. The Court agrees, and the decision of the Commissioner is therefore reversed.

The ALJ determined that the claimant had the severe impairment of lumbar degenerative disc disease, as well as the non-severe impairments of osteoarthritis, obesity, hypertension, systolic murmur, hyperlipidemia, sleeping problems, hypothyroidism, abnormal vaginal bleeding, status post hysterectomy, constipation, abdominal pain, bloating, hemorrhoids, tobacco abuse, and plantar fasciitis (Tr. 36). He found her alleged depression was not medically determinable (Tr. 38-39). The relevant medical evidence reveals that the claimant presented to ABC Medical Clinic on October 12, 2010, with, *inter alia*, pain in her left knee, ankle, and calf, and a burning sensation in her left knee and ankle, and was prescribed pain medication (Tr. 303). The record contains no further evidence of medical treatment until the claimant established care with

Dr. Chris Sturch on June 7, 2012, and reported left hip pain that was radiating to her thigh (Tr. 313-15). Dr. Sturch ordered x-rays of the claimant's hip and knee, but such reports are not contained in the record (Tr. 313).

The claimant established care with Dr. Vivek Khetpal on August 16, 2012, and he regularly treated her through September 20, 2013 (Tr. 325-44, 357-59, 388-425). Dr. Khetpal's diagnoses included, *inter alia,* chest pain, labile hypertension, arthritic back, knee pain, radicular arm pain, and lower limb edema (Tr. 325-44, 357-59, 388-425). The claimant's treatment largely consisted of medication management, but she did receive an injection in her left knee on March 29, 2013, and one in her right knee on April 5, 2013 (Tr. 406-11). A stress test performed on September 24, 2012, was symptomatically negative (Tr. 328). Dr. Khetpal's treatment notes regularly reflect the claimant's labile hypertension was well controlled with medication (Tr. 325-44, 357-59, 388-425). A CT scan conducted on October 10, 2012, revealed, *inter alia,* degenerative changes of the claimant's lumbar spine, most prominent at the L2-3 disc level (Tr. 343-44). On physical examination, Dr. Khetpal frequently noted pain and/or decreased range of motion in the claimant's back (Tr. 326, 358, 389, 392, 395, 404, 407, 410, 422, 424).

On July 20, 2012, William Cooper, D.O., performed a consultative physical examination of the claimant (Tr. 317-23). Dr. Cooper noted the claimant had full range of motion in her hips, knees, and left shoulder, but experienced pain with such testing (Tr. 318). He also noted full range of motion in her cervical spine, thoracic spine, and lumbar-sacral spine, but that her low back was tender to palpation (Tr. 318). He found no swelling in the claimant's knees or legs, and stated her gait was normal (Tr. 318-19). Dr.

Cooper assessed the claimant with osteoarthritis, chronic low back pain, and anemia (probably low iron deficiency) (Tr. 319).

State reviewing physician Dr. Karine Lancaster completed a Physical Residual Functional Capacity Assessment on February 6, 2013, and found the claimant capable of performing light work with frequent kneeling and crouching, and occasional stooping and crawling (Tr. 96-106).

On June 6, 2013, the claimant presented to Dr. Matthew Jackman, a podiatrist, and reported bilateral foot and ankle pain (Tr. 380-85). Dr. Jackman noted the claimant had mild bunion deformities on both of her feet, and tenderness along the plantar fascia and into her left heel, but no weakness, swelling, or redness (Tr. 384-85). An x-ray taken that day revealed a plantar heel spur and a mild bunion on the claimant's left foot (Tr. 385). Dr. Jackman diagnosed the claimant with a calcaneal spur and plantar fasciitis, and recommended physical therapy (which the claimant deferred), as well as conservative treatments including icing, stretching, activity modifications, appropriate shoe gear, and use of supportive inserts (Tr. 385).

At the administrative hearing, the claimant testified that she is unable to work due to spurs on her feet, back pain, leg pain, and a "messed up" left arm (Tr. 58). She testified that pain medications are effective in treating her pain (Tr. 58-59). She stated she experiences swelling in her feet daily, which is relieved by elevation (Tr. 65-66). She further stated her systolic heart murmur causes chest pain when she lifts, exerts herself, or runs (Tr. 67-68). Regarding her daily activities, the claimant testified she mostly watches television during the day, but does limited household chores in small increments (Tr. 60-

61). As to specific limitations, the claimant stated she could lift ten to fifteen pounds, stand for ten to fifteen minutes before needing to sit, and sit for twenty to thirty minutes before needing to stand (Tr. 60-62).

In his written opinion, the ALJ summarized the claimant's testimony, as well as the medical evidence. The ALJ noted the claimant's non-severe impairments at step two, and explained why he concluded they were non-severe (Tr. 11-14). At step four, he discussed the medical evidence related to the claimant's only severe impairment, and determined that she was not completely credible, but did not mention the claimant's multiple non-severe impairments at this step (Tr. 39-43). The ALJ's failure to consider all of the claimant's impairments, both singly and in combination, at step four was error. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."); *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). More

specifically, the ALJ should *at least* have discussed the impact of the claimant's obesity on her other impairments in light of the impact that obesity can have on the musculoskeletal system coupled with the claimant's documented repeat problems related to pain and/or decreased range of motion in her back, as well as Dr. Khetpal's repeat recommendations of weight loss for treating her labile hypertension, chest pain, and arthritic back (Tr. 325-39, 357-59, 388-425). *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting "obesity is [a] medically determinable impairment [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (discussing requirements of SSR 02-01p and finding that "the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments.").

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**